# UNITED STATES DISTRICT COURT
### for the
Northern District of Iowa

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | Case No. 19-MJ-149 |
| | ) | |
| Raven Damien Meader Burkhow | ) | |
| | ) | |
| _Defendant(s)_ | | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____ April 29, 2019 _____ in the county of _____ Linn _____ in the
_____ Northern _____ District of _____ Iowa _____ , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 USC §§ 922(g)(3) and 924(a)(2) | Possession of Firearm by User of Controlled Substance |
| 21 USC §§ 841(a)(1) and 841(b)(1)(C) | Distribution of Controlled Substance |

This criminal complaint is based on these facts:

See attached Affidavit.

☑ Continued on the attached sheet.

_____
_Complainant's signature_

Joshua D. Lupkes, ATF Special Deputy
_Printed name and title_

☑ Sworn to before me and signed in my presence.

☐ Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone or other reliable electronic means.

Date: _____ April 30, 2019 _____

_____
_Judge's signature_

Northern District of Iowa

Mark A. Roberts, United States Magistrate Judge
_Printed name and title_

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### CEDAR RAPIDS DIVISION

## AFFIDAVIT

I, Joshua D. Lupkes, being first duly sworn, on oath, do depose and state as follows:

1.  I am employed as a Special Agent with the Iowa Division of Narcotics Enforcement, and have served in that capacity since November of 1999. Prior to that, I served as a Police Officer for the City of Cedar Falls for approximately two and a half years. I am currently assigned as a Special Deputy with the Bureau of Alcohol Tobacco Firearms and Explosives in Cedar Rapids, Iowa. This affidavit is submitted for the purpose of establishing probable cause in support of a criminal complaint for RAVEN DAMIEN MEADER BURKHOW for the crimes of distribution of cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) and possession of a firearm by a user of controlled substances in violation of 18 U.S.C. §§ 922(g)(3) and 924(a)(2).

2.  The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is probable cause for the requested arrest warrant and does not set forth all of my knowledge about this matter.

3. Based on my training and experience, and the facts set forth in this affidavit, there is probable cause to believe that RAVEN DAMIEN MEADER BURKHOW has committed the crimes of distribution of cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) and possession of a firearm by a user of controlled substances in violation of 18 U.S.C. §§ 922(g)(3) and 924(a)(2).

4. In March of 2019, law enforcement developed a Confidential Source (hereafter referred to as the CS) who provided information regarding BURKHOW. The CS indicated that BURKHOW was involved in selling firearms and multiple ounce quantities of cocaine. The CS related that BURKHOW sold "ghost guns" which are guns manufactured privately from unfinished receivers that do not have manufacturer serial numbers. The CS additionally relayed that BURKHOW sells silencers, and rifles converted to fire fully automatic. The CS provided BURKHOW's phone number.

5. The CS is cooperating with law enforcement for consideration of receiving a lesser charge or penalty for impending narcotics and firearms offenses. The CS has no other prior criminal history.

6. On March 12, 2019, the CS conducted a controlled purchase of cocaine from BURKHOW. On that date, the CS made arrangements via a messaging application to purchase cocaine from BURKHOW in the 200 block alley between First Avenue SE and Second Avenue SE in Cedar Rapids, Iowa. BURKHOW informed the CS that BURKHOW had a flight lesson and could

meet the CS after the lesson to conduct the sale. The CS shared the messages with law enforcement.

7. Before the controlled purchase, surveillance personnel observed a red Buick LaCrosse parked in the parking lot at First Avenue and Third Street SE in Cedar Rapids, Iowa. This vehicle was registered to BURKHOW. The registration on the vehicle lists the color as silver, however the vehicle is actually red in color. Surveillance personnel observed BURKHOW enter the vehicle and travel to the Marion, Iowa, airport. Surveillance personnel then followed BURKHOW from the airport back to the parking lot at First Avenue SE and Third Street SE.

8. The CS and the CS's vehicle were searched for contraband before the controlled purchase and no contraband was found. Agents also provided the CS with $1,600 in pre-serialized United States Currency. The CS was equipped with an audio transmitter and recorder which would allow surveillance personnel to monitor the transaction and for the transaction to be recorded. The CS then traveled to the area of the 200 block alley between First Avenue SE and Second Avenue SE. The CS met with BURKHOW in a doorway which led to an apartment building located at XXX First Avenue SE. The CS provided BURKHOW with $1,600 in pre-serialized United States Currency, and BURKHOW gave the CS approximately one ounce of suspected cocaine.

9. During the transaction, the CS also spoke with BURKHOW about obtaining a rifle converted to fire fully automatic. BURKHOW told the CS that there were five rifles that were in the process of being converted; however they were not yet complete. The CS then left the area and drove to meet law enforcement. Surveillance personnel observed BURKHOW depart the area driving the vehicle described above.

10. After the controlled purchase of cocaine from BURKHOW, the CS met with law enforcement and turned over the one ounce of suspected cocaine the CS had obtained from BURKHOW and the recording equipment. The CS and the CS's vehicle were searched after the controlled purchase for contraband and no contraband was found. A field test on the suspected cocaine indicated positive results for cocaine. This substance was found to weigh approximately 29.2 grams as purchased, with packaging. This substance will be submitted to the Iowa Division of Criminal Investigation Criminalistics Laboratory in Ankeny, Iowa.

11. On March 14, 2019, the CS again made arrangements to purchase cocaine from BURKHOW. The CS also requested to purchase from BURKHOW a handgun with a silencer. BURKHOW agreed. Surveillance personnel established surveillance on the Buick LaCrosse. Surveillance personnel followed BURKHOW from that residence to the parking lot located in at First Avenue SE and Third Street SE in Cedar Rapids, Iowa.

12. The CS and the CS's vehicle were searched for contraband before the controlled purchase and no contraband was found. Agents provided the CS with $3,400 in pre-serialized United States Currency. The CS was equipped with an audio transmitter and recorder which would allow surveillance personnel to monitor the transaction and for the transaction to be recorded. The CS traveled to the area of the 200 block alley between First Avenue SE and Second Avenue SE and met with BURKHOW at the door leading to the apartments at XXX 1st Avenue SE.

13. The CS provided BURKHOW with $1,600 in United States Currency in exchange for approximately one ounce of cocaine. Additionally, the CS provided BURKHOW with $1,800, consisting of payment of $900 for the handgun, and $900 for the attached silencer. Following the controlled purchase, surveillance personnel observed BURKHOW depart the area traveling in the vehicle described above.

14. After the controlled purchase, the CS met with law enforcement officers and turned over the one ounce of suspected cocaine, the handgun, and the suspected silencer the CS had obtained from BURKHOW. The CS and the CS's vehicle were searched after the controlled purchase for contraband and no contraband was found. A field test on the suspected cocaine indicated positive results for cocaine. This substance was found to weigh approximately 29.0 grams as purchased, with packaging. This substance will

be submitted to the Iowa Division of Criminal Investigation Criminalistics Laboratory in Ankeny, Iowa.

15. The handgun was determined to be a 9 millimeter semi-automatic pistol without manufacturer's markings or serial numbers. The suspected silencer was attached to the firearm. Both the handgun and silencer were submitted to the ATF Firearm Technology Branch, to determine their status. The ATF Firearm Technology Branch analyzed both items and determined they both met the definition of a "firearm." Additionally, the suspected silencer met the definition as a "firearm silencer." A query of the National Firearms Transfer and Registration Record revealed that the silencer was not registered to BURKHOW.

16. On March 26, 2019, law enforcement received the tenant list for XXX First Avenue SE in Cedar Rapids, Iowa. The tenant list indicated that RAVEN BURKHOW was the tenant for Apartment #XXX and provided a phone number that was the same number provided to law enforcement by the CS.

17. On March 29, 2019, your affiant applied for and was granted a court order in the Northern District of Iowa to install a GPS tracking device on the Buick LaCrosse being operated by BURKHOW. This device was installed on BURKHOW's vehicle on April 01, 2019, and would allow law enforcement to monitor the movements of the vehicle.

18. On April 01, 2019, the CS again made arrangements to purchase cocaine from BURKHOW. Prior to the transaction, surveillance personnel observed

BURKHOW arrive and park the Buick LaCrosse in the parking located at Third Street SE and First Avenue SE.

19. The CS and the CS's vehicle were searched for contraband before the controlled purchase and no contraband was found. Agents provided the CS with $3,400 in pre-serialized United States Currency. The CS was equipped with an audio transmitter and recorder which would allow surveillance personnel to monitor the transaction and for the transaction to be recorded. The CS traveled to the area of the 200 block alley between First Avenue SE and Second Avenue SE and met with BURKHOW at the door leading to the apartments at XXX First Avenue SE.

20. The CS provided BURKHOW with $1,600 in United States Currency in exchange for approximately one ounce of cocaine. The CS asked BURKHOW about obtaining another handgun with a silencer, however BURKHOW said he could get the CS one, but he currently did not have any. BURKHOW also discussed an individual who was converting rifles to fire fully automatic for BURKHOW.

21. After the controlled purchase from BURKHOW, the CS met with law enforcement and turned over the one ounce of suspected cocaine the CS had obtained from BURKHOW. The CS and the CS's vehicle were searched after the controlled purchase for contraband and no contraband was found. A field test on the suspected cocaine indicated positive results for cocaine. This substance was found to weigh approximately 29.0 grams as purchased, with

packaging. This substance will be submitted to the Iowa Division of Criminal Investigation Criminalistics Laboratory in Ankeny, Iowa.

22. On April 15, 2019, the CS again made arrangements to purchase cocaine from BURKHOW. Surveillance personnel established surveillance in the area of BURKHOW's residence located at XXX First Avenue SE.

23. The CS and the CS's vehicle were searched for contraband before the controlled purchase and no contraband was found. Iowa Division of Narcotics Enforcement Special Agent ("SA") Kyle Bassett, acting in an undercover capacity, traveled with the CS during this transaction. Agents provided the CS with $1,600 in pre-serialized United States Currency. The CS was equipped with an audio transmitter and recorder that would allow surveillance personnel to monitor the transaction and for the transaction to be recorded. The CS and SA Bassett traveled to the area of the 200 block alley between First Avenue SE and Second Avenue SE. The CS exited the vehicle and met with BURKHOW at the door leading to the apartments at XXX First Avenue SE, while SA Bassett remained in the vehicle.

24. The CS provided BURKHOW with $1,600 in pre-serialized United States Currency in exchange for approximately one ounce of cocaine. BURKHOW told the CS that he would have the firearms soon, in order for the CS to purchase them.

25. After the controlled purchase, the CS met with law enforcement officers and turned over the one ounce of suspected cocaine. The CS and the CS's vehicle

were searched after the controlled purchase for contraband and no contraband was found. A field test on the suspected cocaine indicated positive results for cocaine. This substance was found to weigh approximately 29.3 grams, as purchased with packaging. This substance will be submitted to the Iowa Division of Criminal Investigation Criminalistics Laboratory in Ankeny, Iowa.

26. Throughout this investigation, aided by the GPS tracking device, law enforcement has noted that BURKHOW's vehicle is often parked in the area of the parking lot located at Third Street SE and First Avenue SE. This lot is located directly east of BURKHOW's apartment building. BURKHOW's vehicle often will be parked in that parking lot for extended periods of time and typically during the overnight hours.

27. On April 23, 2019, the CS received messages via the messaging application from BURKHOW. BURKHOW sent the CS two videos which show what appears to be two different rifles being fired in a fully automatic capacity. The CS and BURKHOW discussed via the messaging application that the CS was interested in purchasing these firearms. On April 24, 2019, BURKHOW advised the CS that BURKHOW would sell the CS one of the rifles on Friday, April 26, 2019.

28. On April 25, 2019, your affiant applied for and was granted a search warrant in the Northern District of Iowa to search BURKHOW's residence in Cedar Rapids, Iowa.

29. On April 29, 2019, the CS made arrangements to purchase cocaine from BURKHOW along with the converted rifle with an integrated silencer. Surveillance personnel established surveillance in the area of BURKHOW's residence.

30. The CS and the CS's vehicle were searched for contraband before the controlled purchase and no contraband was found. Agents provided the CS with $5,600 in pre-serialized United States Currency. The CS was equipped with an audio transmitter and recorder that would allow surveillance personnel to monitor the transaction and for the transaction to be recorded. The CS traveled to the area of the 200 block alley between First Avenue SE and Second Avenue SE. The CS exited the vehicle and met with BURKHOW at the door leading to the apartments where BURKHOW lived.

31. The CS provided BURKHOW with $1,600 in pre-serialized United States Currency in exchange for approximately one ounce of cocaine. The CS also provided BURKHOW with $4,000 in pre-serialized United States Currency in exchange for the rifle.

32. After the controlled purchase, the CS met with law enforcement officers and turned over the one ounce of suspected cocaine and the rifle. The CS and the CS's vehicle were searched after the controlled purchase for contraband and no contraband was found. This substance was found to weigh approximately 33.9 grams, as purchased with packaging. A field test on the suspected cocaine indicated positive results for cocaine. This substance will be

submitted to the Iowa Division of Criminal Investigation Criminalistics Laboratory in Ankeny, Iowa.

33. The rifle was determined to be an AR style rifle chambered in .300 Blackout, without markings or serial numbers. The rifle was equipped with an integrated suspected silencer. The rifle will be submitted to the ATF Firearms Technology branch to determine its status. Those results have not yet been received.

34. Following this controlled purchase, law enforcement officers made contact with BURKHOW as he exited the apartment building and detained him pursuant to the execution of the search warrant. At that time, BURKHOW was armed with two handguns and a belt buckle knife. Officers then executed the search warrant at the residence.

35. During the search of the residence, law enforcement seized approximately fourteen (14) firearms, eight (8) suspected silencers, and three (3) suspected integrated silencers, suspected cocaine, thousands of rounds of ammunition, a currency counting machine, drug paraphernalia, a large safe, and numerous other items. The suspected cocaine weighed approximately 178 grams with packaging. A field test on the suspected cocaine indicated positive results for cocaine.

36. BURKHOW was advised of his *Miranda* rights. In a subsequent interview, BURKHOW admitted that he was a user of controlled substances.

BURKHOW also stated there were guns and gold bars in the safe, however would not provide law enforcement with a combination to the safe.

37. Based on the foregoing information, your affiant believes probable cause exists for a criminal complaint for RAVEN BURKHOW for the crimes of distribution of cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) and possession of a firearm by a user of controlled substances in violation of 18 U.S.C. §§ 922(g)(3) and 924(a)(2).

I declare under the penalty of perjury that the above-foregoing facts and circumstances are true and correct to the best of my knowledge and belief.

Executed this __30__ day of __APRIL__, 2019.

Joshua D. Lupkes
Special Deputy
Bureau of Alcohol Tobacco Firearms
and Explosives

Subscribed and sworn to before me this __30__ day of __April__, 2019.

Mark A. Roberts
United States Magistrate Judge
Northern District of Iowa